UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


DOROTHEA DARAIO,                    :
                                   :   HONORABLE JOSEPH E. IRENAS
               Petitioner,         :
                                   :   CIVIL ACTION NO. 07-4295 (JEI)
     v.                            :
                                   :
UNITED STATES OF AMERICA,          :            **OPINION**
                                   :
               Respondent.         :


**APPEARANCES:**

Burton A. Rose, Esq.
1731 Spring Garden Street
Philadelphia, PA 19130
     Counsel for Petitioner

Nanette L. Davis, Esq.
     and
Diana H. Beinart, Esq.
U.S. Department of Justice
Tax Division, Northern Criminal Enforcement Section
P.O. Box 972
Washington, D.C. 20044
     and
Norman J. Gross, Esq.
Office of the U.S. Attorney
401 Market Street, 4th Floor
Camden, NJ 08101
     Counsel for Respondent


**IRENAS**, Senior District Judge:

     Before the Court is Petitioner Dorothea Daraio's Motion to
Vacate, Set Aside or Correct Sentence brought under 28 U.S.C. §
2255.  Petitioner claims that she was denied her Sixth Amendment
right to effective assistance of counsel, both at trial and on
direct appeal.  Specifically, Petitioner presents four arguments:
(1) trial counsel failed to demand a more complete cautionary

instruction to the jury upon the introduction into evidence of Petitioner's prior acts of noncompliance with federal tax laws, which were deemed admissible pursuant to Federal Rule of Evidence 404(b); (2) trial counsel failed to object to alleged prosecutorial misconduct during summation, when the Government made several statements about Petitioner's prior acts of noncompliance; (3) on direct appeal, appellate counsel failed to raise an alleged sentencing error as to the tax loss calculation; and (4) appellate counsel failed to raise a second alleged sentencing error with regard to an enhancement for Petitioner's abuse of trust.  For the reasons set forth below, Petitioner's motion will be denied without an evidentiary hearing.

### I.

On April 13, 2004, a grand jury indicted Petitioner on one count of "knowingly and wilfully attempt[ing] to evade and defeat the payment of a substantial part of the payroll taxes due . . . to the United States for the calendar year 1998, in the amount of approximately $222,607.40," in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2.  The grand jury returned a superseding indictment on August 17, 2004, expanding the relevant period of time included in the charged offense to the quarterly periods between April 1994 and April 1998.

During this period of time, Petitioner was the owner and president of Eagle Security, Inc, which provided security

2

services to businesses in southern New Jersey.  In that role Petitioner was required to withhold and pay over payroll taxes to the IRS on the amount of wages Eagle Security paid to its employees.  The indictment alleged that Petitioner failed to do so from April, 1994 through April, 1998, and as a result the IRS levied on amounts due from ten Eagle Security clients.  The levies required the clients to pay the IRS any outstanding obligations due to Eagle Security.  However, the indictment alleged that shortly before the issuance of the levies Petitioner had created E.S.S. Co., a successor corporation to Eagle Security, and that after the government levies Petitioner sent invoices to the ten clients in the name of E.S.S. even though the services had already been rendered by Eagle Security.  Had this scheme succeeded money owed to Eagle Security, which was payable to the IRS by reason of the levies, would instead be paid to E.S.S., which was simply the continuation of Eagle Security under a different name.

Prior to the commencement of trial the Government filed two notices of its intent to offer Rule 404(b) evidence.  In particular, the Government sought to offer, among other evidence, proof that Petitioner acted as the general manager of Quest Investigators, the predecessor to Eagle Securities.  Petitioner's husband, Joseph Daraio, owned Quest.  The Government intended to prove that, similar to Eagle Securities, Quest amassed large

unpaid employment tax liabilities and then ceased to exist when the IRS sought payment.  The purpose of this evidence, according to the Government, was to show that Petitioner's demand that Eagle Security clients pay outstanding obligations to the newly-created E.S.S. "was not a mistake as [she] maintains but done with the intent to thwart the IRS's efforts to collect Eagle's employment taxes."  The Government also provided notice of its intent to offer evidence that Petitioner failed to file personal and corporate income tax returns from 1996 to 1998 in order to establish her wilfulness in evading tax obligations.[1]  On October 25, 2004, the Court held a hearing before opening statements during which it ruled that the proposed 404(b) evidence was admissible.  Petitioner's counsel objected to the Court's ruling.

On November 10, 2004, a jury convicted Petitioner of the one count in the indictment.  The jury also found beyond a reasonable doubt that the loss for Petitioner's conviction of tax evasion was $259,443.65.  On April 29, 2005, the Court sentenced Petitioner to a term of 41 months imprisonment, three years of supervised release, and a fine of $25,000.

---

[1]  Petitioner's trial counsel filed a brief on October 11, 2004, arguing that the 404(b) evidence that the Government sought to introduce should be deemed inadmissible.  He concluded that "[t]he Government does not need to introduce such evidence in order to attempt to prove it's [sic] case.  The unrelated evidence is prejudicial and the jury would be confused by factual disputes related to those issues.  It would also be an unnecessary waste of time."

Petitioner filed a timely direct appeal to the United States Court of Appeals for the Third Circuit, and on April 10, 2006, the Third Circuit affirmed the judgment of conviction. *See United States v. Daraio*, 445 F.3d 253 (3d Cir. 2006).  On January 8, 2007, the United States Supreme Court denied Daraio's petition for a writ of certiorari. *See Daraio v. United States*, 127 S. Ct. 932 (2007).  The present § 2255 motion was filed on September 7, 2007.

## II.

Section 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  Therefore, Petitioner is entitled to relief only if she can establish that she is in custody in violation of federal law or the Constitution.

A district court is given discretion in determining whether to hold an evidentiary hearing on a motion made under § 2255. *See Gov't of V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).  When exercising that discretion, the court must first determine whether the Petitioner's claims, if proven, would entitle her to relief, and if so, if an evidentiary hearing is needed to

determine the truth of the allegations. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 291 (3d Cir. 1991). A district court may dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992); *Forte*, 865 F.2d at 62).

### III.

The *Strickland* standard[2] applies to allegations of ineffective assistance of counsel aimed at both trial and appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). To prevail on a Sixth Amendment claim of ineffective assistance of counsel, Petitioner must make two independent showings. First, she "must show that counsel's performance was deficient," and the "proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 687-88. Second, Petitioner must show that the deficient performance was prejudicial to her case by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

---

[2] *See Strickland v. Washington*, 466 U.S. 668 (1984).

Under the first *Strickland* prong,

[j]udicial scrutiny of counsel's performance must be
highly deferential. . . . A fair assessment of attorney
performance requires that every effort be made to
eliminate the distorting effects of hindsight, to
reconstruct the circumstances of counsel's challenged
conduct, and to evaluate the conduct from counsel's
perspective at the time.  Because of the difficulties
inherent in making the evaluation, a court must indulge
a strong presumption that counsel's conduct falls within
the wide range of reasonable professional assistance;
that is, the defendant must overcome the presumption
that, under the circumstances, the challenged action
might be considered sound trial strategy.  There are
countless ways to provide effective assistance in any
given case.  Even the best criminal defense attorneys
would not defend a particular client in the same way.

*Id.* at 689 (citation and internal quotation marks omitted); *see
also Flamer v. Delaware*, 68 F.3d 710, 727-28 (3d Cir. 1995)
(quoting *Strickland*, 466 U.S. at 687-89).  Furthermore, the
Supreme Court, in discussing practical considerations for the
application of the two-prong standard, has stated that

there is no reason for a court deciding an ineffective
assistance claim to approach the inquiry in the same
order or even to address both components of the inquiry
if the defendant makes an insufficient showing on one.
In particular, a court need not determine whether
counsel's performance was deficient before examining the
prejudice suffered by the defendant as a result of the
alleged deficiencies.  The object of an ineffectiveness
claim is not to grade counsel's performance. If it is
easier to dispose of an ineffectiveness claim on the
ground of lack of sufficient prejudice, which we expect
will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697.

Based on the foregoing standard, the Court will evaluate
each of Petitioner's four arguments that she was denied her Sixth

7

Amendment right to effective assistance of counsel at trial and on direct appeal.

### A.

Petitioner first claims that her trial counsel was ineffective in failing to demand that the Court provide a more complete jury instruction after evidence of prior acts of noncompliance with federal tax laws was deemed admissible under Federal Rule of Evidence 404(b).  The Supreme Court has noted that the concern that unduly prejudicial evidence might be introduced under Rule 404(b) should be mitigated by, among other things, a jury instruction that makes clear "that the similar acts evidence is to be considered only for the proper purpose for which it was admitted."  *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *see also United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988) (citing *Huddleston* in recognizing that for admissibility under Rule 404(b) "the court must charge the jury to consider the other crimes evidence only for the limited purpose for which it is admitted").

At least three times during the course of Petitioner's trial the Court provided the following instruction, or a nearly identical instruction:

> Ladies and gentlemen of the jury, you will soon, and at various other times during the trial, hear evidence of acts the defendant–of acts of the defendant that may be similar to those charged in the indictment, but which were committed on other occasions.

You must not consider any of this evidence in deciding if the defendant committed the acts charged in this indictment. However, you may consider this evidence for other very limited purposes.

If you find beyond a reasonable doubt from other evidence in this case, that the defendant did commit the acts charged in the indictment, then you may consider the evidence of similar acts allegedly committed on other occasions, to determine, one, whether the defendant had the intent necessary to commit the crime charged in the indictment; two, whether the defendant had the motive to commit the act charged in the indictment; or, three, whether the defendant willfully committed the acts for which she is on trial, or rather committed them by accident, negligence, or mistake.

These are the limited purposes for which any evidence of other similar acts may be considered.

(Gov't Ex. D at 84-85; *see also* Ex. E at 961-62; Ex. F at 1929-30.)

Nonetheless, Petitioner claims that her trial counsel should have objected to this instruction and should have insisted that the jury be instructed pursuant to *Third Circuit Model Criminal Jury Instruction* § 4.29, which provides:

You have heard testimony that the defendant *(summarize the other act evidence)*.

This evidence of other act *(s)* was admitted only for *(a)* limited purpose *(s)*. You may consider this evidence only for the purpose of deciding whether the defendant *(describe the precise purpose or purposes for which the other act evidence was admitted)* . . . .

Do not consider this evidence for any other purpose.

Of course, it is for you to determine whether you believe this evidence and, if you do believe it, whether you accept it for the purpose offered. You may give it such weight as you feel it deserves, but only for the limited purpose that I described to you.

9

The defendant is not on trial for committing these other acts. You may not consider the evidence of these other acts as a substitute for proof that the defendant committed the crime*(s)* charged. You may not consider this evidence as proof that the defendant has a bad character or any propensity to commit crimes. Specifically, you may not use this evidence to conclude that because the defendant may have committed the other act*(s)*, *(he)(she)* must also have committed the act*(s)* charged in the indictment.

Remember that the defendant is on trial here only for *(state the charges briefly)*, not for these other acts. Do not return a guilty verdict unless the government proves the crime*(s)* charged in the indictment beyond a reasonable doubt.[3]

Petitioner then cites a litany of Third Circuit cases, as

---

[3] The Court notes that at the time of Petitioner's trial in 2004, the Third Circuit model instructions did not exist. The committee appointed by Chief Judge Anthony J. Scirica "commenced its work in September 2004." *Introduction* to *Third Circuit Model Criminal Jury Instructions*. Chapters 1 through 5 of the model instructions, which included section 4.29, were first promulgated in September 2006, almost two full years *after* Petitioner was convicted. Accordingly, it would have been impossible for Petitioner's trial counsel to request that the jury be instructed pursuant to that precise section. However, for purposes of this analysis, the Court will assume that Petitioner is arguing that her trial counsel should have insisted on a jury instruction similar to section 4.29 of the *Third Circuit Model Criminal Jury Instructions*. *See, e.g.*, *Eighth Circuit Manual of Model Criminal Jury Instructions* § 2.08 n.2 (2000) (noting that optional paragraph instructing jury that it "may not convict a person simply because [it] believe[s] [he] [she] may have committed similar acts in the past" is intended to explain "that prior similar act evidence is not admissible to prove propensity to commit crime" (third and fourth alterations in original)); 1A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions: Criminal* § 17.08 (5th ed. 2000) ("The defendant is not on trial for any acts or crimes not alleged in the indictment. Nor may a defendant be convicted of the crime[s] charged even if you were to find that [*he*] [*she*] committed other crimes–even crimes similar to the one charged in this indictment." (alterations in original)).

well as several cases from other circuits, for the relatively
unobjectionable proposition that, "where repeated references are
permitted at trial under Rule 404(b) to prior [similar acts] of
the accused, the cautionary instruction must address the
fundamental concern that the jury must not convict in part
because it believes that the defendant has a propensity to commit
such [acts], is of a criminal personality or has a wicked
character . . . even if there otherwise exists a reasonable doubt
about the Petitioner's guilt on the charge for which she stands
trial."  (Petitioner's Br. at 7.)

     That is precisely the type of cautionary instruction that
the Court provided to the jury, and Petitioner was not prejudiced
by her counsel's failure to request that an instruction similar
to the Third Circuit's model be given.  The lack of a specific
reference to 404(b) evidence not being considered "as proof that
the defendant has a bad character or any propensity to commit
crimes," does not make the instruction given by the Court
inadequate or insufficient.  In fact, quite to the contrary, the
Third Circuit on direct appeal stated that it was satisfied that
the jury instructions provided by this Court "properly focused
the jury on Daraio's conduct as charged in the indictment by
repeatedly instructing the jury to confine its consideration of
the Rule 404(b) evidence to its proper purpose."  *Daraio*, 445
F.3d at 261.

Petitioner cannot establish prejudice under *Strickland* because even if her trial counsel objected to the Court's instruction and requested an instruction similar to section 4.29, the Court was not bound to follow the instructions word for word. The law does not require that the Court give a jury instruction worded in a specific or particular manner.[4]  Rather, *Huddleston* and *Scarfo* require that the Court provide a general instruction informing the jury that it should consider 404(b) evidence only for the limited purpose or purposes for which such evidence is admitted.

As the Third Circuit made clear on Petitioner's direct appeal, the instruction given by the Court multiple times during the trial more than satisfied this requirement.  The instruction stated that the jury could not consider the 404(b) evidence in deciding whether Petitioner committed the crime charged in the indictment, it stated that the jury could only consider the evidence for very limited purposes, and it proceeded to inform the jury of the specific purposes for which the evidence could be considered.  Such an instruction was tantamount to telling the jury that it could not consider the 404(b) evidence as proof that

---

[4]  The introduction to the *Third Circuit Model Criminal Jury Instructions*, similar to other model instructions, states: "We recognize that the manner of instructing a jury varies widely among judges.  These model instructions are available to judges and litigants *to be used in their discretion* in tailoring the instructions in a particular case.  *They are intended to be model, not mandatory, instructions*."  (emphases added).

Petitioner had a bad character or a propensity to commit crimes. Because the jury instruction given at trial was proper as a matter of law, Petitioner cannot establish that but for counsel's failure to object the result would have been different—it is quite possible that the Court would have given the same jury instruction even if trial counsel objected.

Furthermore, Petitioner has provided no proof that the outcome of her trial would have changed if her attorney successfully objected and a charge similar to the Third Circuit model instruction was read to the jury.  The only substantive difference between this Court's instruction and section 4.29 of the Third Circuit model instruction is the latter's specific statement to the jury that it "may not consider [Rule 404(b)] evidence as proof that the defendant has a bad character or any propensity to commit crimes."  But as the Third Circuit recently stated in *Albrecht v. Horn*, quoting the Supreme Court, "an 'omission, or an incomplete [jury] instruction, is less likely to be prejudicial than a misstatement of the law.'"  485 F.3d 103, 129 (3d Cir. 2007) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).  As discussed above, Petitioner cannot establish that the Court's original instruction was a misstatement of the law, and she has provided no proof that the omission of the Third Circuit model instruction's statement was prejudicial to her case.

Accordingly, because Petitioner has not established sufficient prejudice under *Strickland*, her claim of ineffective assistance of trial counsel on this ground will be denied.

**B.**

Petitioner next claims that her trial counsel was ineffective in failing to object to alleged prosecutorial misconduct during summation.  Specifically, she claims that she was prejudiced by several statements made by the Government during its closing argument, which referenced the 404(b) evidence this Court deemed admissible.  The statements included, among others: "Well, it's apparent if you've been thumbing your nose at the IRS for 20 years, you've gotten pretty good at not taking responsibility for your own actions" (Gov't Ex. G at 1757); "After 20 years of snubbing the IRS, of doing absolutely everything in her powers to avoid paying her personal, corporate and payroll taxes, the defendant is sitting here in this courtroom telling all of you that now she is a champion for the rights of the IRS" (*Id.* at 1769); "We are here for one reason only; that is because the defendant, Dorothea Daraio, is a tax cheat.  She has done everything in her power for the last 20 years to live essentially a tax-free life" (*Id.* at 1771).

The Third Circuit has stated that "[t]he prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from

14

that evidence." *United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991); *see also United States v. Green*, 25 F.3d 206, 210 (3d Cir. 1994) (quoting *Werme*, 939 F.2d at 117).  Moreover, an objectively reasonable trial lawyer may determine that objecting during the Government's closing argument is generally not an advisable trial strategy.  *See Zakrzewski v. McDonough*, 455 F.3d 1254, 1258-60 (11th Cir. 2006) (affirming the denial of a state habeas petitioner's ineffective assistance of counsel claim because an "objectively reasonable trial lawyer could . . . believe" that it was preferable "not to make objections during closing argument unless the objection is a strong one").

Here, the performance of Petitioner's counsel was not constitutionally deficient, particularly when considered in the highly deferential light that it must be.  Before the trial commenced, Petitioner's counsel submitted a written brief and orally objected to the Government's proposed Rule 404(b) evidence.  After the Court ruled that the evidence was admissible, counsel also requested that a cautionary instruction be given to the jury multiple times during the trial, which the Court provided.  Thereafter, the Government made arguments during summation based on the admissible 404(b) evidence and reasonable inferences that could be drawn from it.  The Government's statements were not so inflammatory as to exceed the considerable latitude it has during summation.  Rather, its statements called

15

attention to how Petitioner's prior acts helped to establish the elements of intent and wilfulness necessary to convict Petitioner of tax evasion.

Given all of the foregoing, an objectively reasonable trial lawyer might decide, as a matter of sound trial strategy, that no benefit could be gained from objecting during the Government's closing argument.  First, Petitioner's counsel could have reasonably believed that objecting to the Government's references to her prior acts would have only highlighted them further and put them in the forefront of the jury's mind during its deliberations.  In addition, counsel already objected to the admissibility of the 404(b) evidence and requested, and received, an appropriate cautionary instruction multiple times.  It would be objectively reasonable for counsel to determine that nothing more could be achieved by objecting during the Government's summation and that doing so would only serve to frustrate both the jury and the Court.  In either case, not only would there have been no benefit to Petitioner, but there quite possibly would have been a significant detriment.

Therefore, Petitioner has not established that her trial counsel's performance was constitutionally deficient as a result of his failure to object during the Government's summation, and her claim of ineffective assistance of counsel on this ground will be denied.

16

**C.**

Petitioner's third claim is that her appellate counsel was ineffective in failing to argue on direct appeal that a sentencing error occurred with respect to the tax loss determination.  Pursuant to section 2T1.1 of the United States Sentencing Guidelines, a defendant's base offense level for tax evasion is determined based on the tax loss.  *See* U.S.S.G. § 2T1.1(a)(1); *see also id.* § 2T4.1.  That section's special instructions provide, "If the offense involved tax evasion . . . the tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)."  U.S.S.G. § 2T1.1(c)(1). The application notes further state:

> In determining the total tax loss attributable to the offense . . . all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated. The following examples are illustrative of conduct that is part of the same course of conduct or common scheme or plan: (a) there is a continuing pattern of violations of the tax laws by the defendant; (b) the defendant uses a consistent method to evade or camouflage income . . . .

*Id.* application note 2.

Petitioner argues that the tax loss in her case should only be $22,376.00, which appears to constitute the total of the invoices sent in the name of E.S.S. to Eagle Security clients, for work done by Eagle Security, after the levies were imposed by the IRS.  In other words, $22,376.00 is the value of the invoices

17

that were originally sent to clients from Eagle Security and then
sent again from the newly created E.S.S. in an attempt to evade
the IRS levies.  The Government's contention during sentencing,
with which the jury had agreed, was that the total amount of loss
that was the object of Petitioner's offense was $259,443.65,
constituting the total amount of payroll taxes due to the IRS
from the relevant time period of April 1994 through April 1998.
The Government argued that even though the fraudulent invoices in
the name of E.S.S. were limited in amount to the unpaid balances
owed to Eagle Security by its clients at the time of the IRS
levies, her creation of E.S.S. as a successor corporation to
Eagle Security, coupled with her creation and mailing of the
fraudulent E.S.S. invoices, demonstrated her knowing and wilful
attempt to evade the payment of all payroll taxes due to the
IRS-that is, $259,443.65.[5]  It is obvious from the evidence at
trial that Petitioner intended to evade her entire payroll tax
liability.  That her particular scheme was by its nature limited

_____

[5]   Under the November 1, 1998 guidelines, which were
applicable in Petitioner's case, section 2T4.1 provides that a
tax loss greater than $13,500 but less than $23,500 results in a
base offense level of 11, U.S.S.G. § 2T4.1(F) (1993 Amendments),
while a tax loss greater than $200,000 but less than $325,000
results in a base offense level of 16, id. § 2T4.1(K).  While the
jury found a tax loss of $259,443.65, the superseding indictment
charged Petitioner with failing to pay over payroll taxes in the
amount of $222,607.40.  However, regardless of whether the total
tax loss was the amount charged in the indictment or the amount
found beyond a reasonable doubt by the jury, Petitioner's base
offense level would have been 16.

to the unpaid invoices due to Eagle Security when the levies occurred does not in any way change Petitioner's intent to evade all payroll taxes.

In evaluating Petitioner's claim of ineffective assistance of appellate counsel under *Strickland*, it is important to note an additional relevant principle.  In a criminal defense, while certain litigation decisions are considered fundamental and are for the client to make, such as the decision whether to take an appeal, "all other decisions fall within the professional responsibility of counsel." *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).  "In particular, it is a well established principle that counsel decides which issues to pursue on appeal, and there is no duty to raise every possible claim." *Id.* (citing *Jones*, 463 U.S. at 751-52).  "Indeed, the 'process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" *Id.* (internal quotation marks omitted) (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)).

The Court cannot find that appellate counsel was constitutionally deficient in failing to raise the alleged sentencing error on direct appeal.  First, the language of section 2T1.1 supports this Court's finding that the tax loss in Petitioner's case was $259,443.65.  Section 2T1.1(c)(1) states

that the tax loss is "the loss that would have resulted had the offense been successfully completed."  To accept Petitioner's argument, one would have to reach the illogical conclusion that she established E.S.S. and sent out duplicate invoices in the name of E.S.S. to Eagle Security's clients with the purpose of evading approximately ten percent of her outstanding payroll tax liability and that she fully intended to pay the other ninety percent of her obligations to the IRS.  Yet there was no evidence presented at trial or sentencing to support such a contention.

In determining the total tax loss, the Sentencing Guidelines permit the Court to consider "all conduct violating the tax laws . . . as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated."  Nothing in the record suggests that Petitioner's failure to pay her payroll taxes between 1994 and 1998, as required by law, was unrelated to her tax evasion scheme.  To the contrary, the evidence at trial established that it was part of the same course of conduct.  Appellate counsel could not be deficient in failing to raise a claim on direct appeal that almost certainly would have been unsuccessful.

Second, even if the Court now concluded that Petitioner's claim had some measure of merit, under the highly deferential standard of *Strickland* and the additional principle enunciated in *Sistrunk*, the Court is in no position to question appellate

counsel's decision not to pursue this particular claim on direct appeal. On appeal Petitioner's lawyer raised three issues: (1) that the evidence at trial coupled with the jury instructions constructively amended the indictment; (2) in the alternative to a constructive amendment of the indictment, that there was a prejudicial variance in the evidence from the terms of the indictment; and (3) that this Court erred in admitting evidence under Rule 404(b). These three claims resulted in a precedential opinion issued by the Third Circuit, *Daraio*, 445 F.3d 253, which probably indicates that court's belief that the issues raised were important even though they were not ultimately successful. *Cf. Internal Operating Procedures of the United States Court of Appeals for the Third Circuit* § 5.2 (2002) ("An opinion . . . is designated as precedential and printed as a slip opinion when it has precedential or institutional value.").

Moreover, in deciding whether to pursue a claim that a sentencing error occurred with regard to the tax loss determination, appellate counsel was confronted with the broad language of the Sentencing Guidelines, the detailed findings of this Court during sentencing as to that issue, and the jury's finding beyond a reasonable doubt that the total tax loss was $259,443.65. As a result, counsel would have been objectively reasonable in deciding that this claim was significantly weaker than the three he decided to pursue on direct appeal. Therefore,

21

the Court concludes that appellate counsel properly exercised his judgment in deciding which issues to pursue on appeal, and he was not constitutionally deficient in failing to raise the alleged sentencing error as to the tax loss.

Petitioner's claim of ineffective assistance of counsel on this ground will be denied.

### D.

Petitioner's final claim is that her appellate counsel was ineffective in failing to advance the claim on direct appeal that this Court erred in applying a two-level sentence enhancement for abuse of trust.  Similar to Petitioner's previous claim, this argument fails because the Court properly applied the sentence enhancement pursuant to the Sentencing Guidelines and, even assuming the claim was meritorious, because appellate counsel properly decided which issues to pursue on appeal.  Since the analysis for the latter reason is virtually identical to that detailed in Part III.C above, the Court will only discuss why the sentence enhancement for abuse of trust was proper, and thus why appellate counsel was not deficient for failing to advance a claim that would have been unsuccessful on appeal.

Section 3B1.3 of the United States Sentencing Guidelines provides, in pertinent part:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.  This adjustment

> may not be employed if an abuse of trust or skill is
> included in the base offense level or specific offense
> characteristic.

U.S.S.G. § 3B1.3.  As a threshold matter, that section's
provision restricting the application of the abuse of trust
enhancement is not applicable in Petitioner's case.  Section
2T1.1, which is the relevant section for determining the base
offense level for tax evasion, does not reference an abuse of
trust and does not explicitly restrict the application of the
enhancement.  *Cf. United States v. Josleyn*, 99 F.3d 1182, 1198-99
(1st Cir. 1996) ("[T]he Sentencing Commission took pains
throughout the Guidelines to specify the circumstances in which
courts should not impose enhancements for abuse of trust.").  In
addition, there is no general language contained in section 2T1.1
that indicates its consideration of whether or not the convicted
defendant occupied a position of public or private trust; the
base offense level pursuant to that section is based exclusively
on the amount of the tax loss involved in the crime.

Next, there can be little doubt that Petitioner occupied "a
position of public or private trust."  The application notes of
section 3B1.3 define such a position as one "characterized by
professional or managerial discretion (i.e., substantial
discretionary judgment that is ordinarily given considerable
deference).  U.S.S.G. § 3B1.3 application note 1; *see also* 26
U.S.C. § 7501 ("Whenever any person is required to collect or

23

withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld *shall be held to be a special fund in trust* for the United States." (emphasis added)).  Here, in Petitioner's role as owner and president of Eagle Security, she was required to withhold and pay over payroll taxes to the IRS on the amount of wages Eagle Security paid to its employees.  She occupied a position of trust because the exercise of her managerial discretion determined exactly how and when such payroll taxes were paid over to the IRS and whether they were paid over at all.

A further, practical consideration of Petitioner's role establishes the logic of a determination that she occupied a position of trust.  In a tax case involving a defendant's decision to intentionally evade the payment of his or her own taxes, the Court would probably not apply an abuse of trust enhancement.  In such a case, while the law requires or expects that an individual will properly pay taxes he or she individually owes to the Government, it would be difficult to find that such an individual abused a position of trust.  If that finding was required, virtually all tax cases would involve an abuse of trust, and the Sentencing Guidelines would likely preclude the application of a two-level enhancement since the enhancement cannot be employed "if an abuse of trust or skill is included in the base offense level or specific offense characteristic."

U.S.S.G. § 3B1.3.

Petitioner's case differs because she was required to withhold wages that belonged to her employees, not to her, for the benefit of the Government.  This is a classic trust, which is defined as "[a] right of property, real or personal, held by one party for the benefit of another." *Black's Law Dictionary* 1352 (5th ed. 1979).  Petitioner's role required her to act as trustee of her employees' wages and to administer such wages for the benefit of the Government pursuant to applicable tax laws. *See id.* (providing further definition of trust as "[a]ny arrangement whereby property is transferred with intention that it be administered by trustee for another's benefit").

Finally, Petitioner abused her position of trust "in a manner that significantly facilitated the commission . . . of the offense."  "Abuse of trust occurs where the employer or vulnerable party relies on another's integrity for protection against the loss occasioned by the crime, and where the trust aspect of the position made the commission of the crime easier." *United States v. Thomas*, 315 F.3d 190, 205 (3d Cir. 2002).  In this case, the very fact that Petitioner had the authority to withhold a portion of her employees' wages based on the trust that she would pay over those amounts to the IRS in the form of payroll taxes made the commission of the crime of tax evasion not just easier, but in fact possible.  If the IRS required each

25

individual employee to pay over a portion of his or her wages to cover various tax obligations, Petitioner would not have been in a position to commit the crime for which she was convicted.

Accordingly, because the sentencing court properly applied the two-level enhancement for an abuse of trust, Petitioner cannot establish that her counsel's performance was deficient or that she suffered prejudice as a result of his failure to pursue the claim on direct appeal.  Petitioner's claim of ineffective assistance of counsel on this final ground will be denied.

## IV.

For the reasons set forth above, the Court will deny Petitioner's Motion to Vacate, Set Aside or Correct Sentence brought pursuant to 28 U.S.C. § 2255.  Because the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue.  *See* 28 U.S.C. § 2253(c).  The Court will issue an appropriate order.

Date:  May 9, 2008

s/ Joseph E. Irenas

**JOSEPH E. IRENAS, S.U.S.D.J**.